UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH WILLIAMS,

    Plaintiff,                            CIVIL ACTION NO. 14-12755

vs.                                    DISTRICT JUDGE MARIANNE O. BATTANI

                                          MAGISTRATE JUDGE MONA K. MAJZOUB

THOMAS BIRKETT, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Kenneth Williams, currently a prisoner at the Carson City Correctional Facility (CCF) in Carson City, Michigan, filed this action under 42 U.S.C. §§ 1983 against Defendants Thomas Birkett (Warden of the Central Michigan Correctional Facility (STF)), Patricia Caruso (former director of the MDOC), E. Balcarcel (Deputy Warden at STF), Valsicol Chemical Corporation (owner of a chemical plant located in St. Louis, MI), Jennifer Granholm (former Governor of the State of Michigan), R. Pung (a Resident Unit Manager at STF), the Michigan Department of Corrections, Dr. Scott Holmes (a physician at CCF), Victoria Merren (a PA at CCF), and Corizon Health.[1]  (Docket no. 1.)  Plaintiff alleges through his Count I that while he was incarcerated at STF, Defendants Birkett, Balcarcel, and Pung violated his Eighth Amendment rights when he was forced to drink water exposed to contamination caused by former Defendant Valsicol.  Plaintiff alleges through his Count II that Defendants Holmes, Merren, and Corizon delayed in providing him adequate medical care related to a tumor on his leg, also in violation of

---

[1] On October 15, 2014, the Court dismissed Defendants MDOC, Valsicol Chemical Corporation, Patricia Caruso, and Jennifer Granholm under 28 U.S.C. § 1915(e)(2).

1

the Eighth Amendment.

Before the Court are Plaintiff's Motion for Immediate Consideration of Plaintiff's Requested Injunctive Relief (docket no. 8) and Defendants Balcarcel and Pung's Motion for Summary Judgment (docket no. 24).[2,3] Plaintiff filed a Response to Defendants' Motion. (Docket no. 25.) All pretrial matters have been referred to the undersigned for consideration. (Docket no. 11.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

## I. Recommendation

For the reasons discussed herein, the Court should grant Defendants' Motion for Summary Judgment [24]. Defendants Balcarcel and Pung should be dismissed from this matter. Additionally, Plaintiff's request for a preliminary injunction should be denied, and his instant Motion for Immediate Consideration of the same [8] should be denied as moot.

## II. Report

### A. Background

With regard to his first claim, Plaintiff alleges that while he was confined at STF from November of 2004 through June of 2009, he began to notice that his "health was deteriorating due to the foul drinking water." (Docket no. 1 at 7.) He claims that he was informed by other prisoners that the water was contaminated, so he started researching the issue in 2010. Plaintiff

---

[2] Defendant Birkett has not yet been served in this matter, and Defendants Holmes, Merren, and Corizon are represented by separate counsel.

[3] Also pending in this matter are Plaintiff's Motions to Amend his Complaint (docket no. 26), for Recusal of Defense Counsel (docket no. 28), and to Amend his Response to Defendants' instant Motion for Summary Judgment (docket no. 31.) The Court will grant Plaintiff's Motion to Amend his Complaint, deny his Motion for Recusal of Defense Counsel, and grant his Motion to Amend his Response in a separate Opinion and Order entered concurrently with this Report and Recommendation.

asserts that he discovered through his research that the land on which the prison now sits used to be farm land, but the livestock on the land all became sick due to contaminated soil caused by Velsicol's use of the land from 1936 through 1978. Plaintiff refers to a series of chemicals and other contaminants that are allegedly "known" to be in the local water supply, including the local Pine River. (*Id.* at 7-8.)

Plaintiff was transferred from STF to CCF in May of 2011. He alleges that in November of 2012, he discovered a large mass on the back of his thigh. After an X-ray, ultrasound, and MRI, doctors determined that he had a tumor "the size of a small football," which Plaintiff contends "had obviously been growing for a while" due to the size. (*Id.* at 8.) He further alleges that the tumor, his surgery to remove it, and the resulting recovery were all very painful. (*Id.*) Additionally, Plaintiff claims, some of the St. Louis citizens (and some rodents on which the water was tested) also had tumors, and because of the contamination, the city provides bottled water for schools. (*Id.* at 8-9.) And he asserts that his family saw a sign posted in the visiting area of STF notifying the public "to consume the St. Louis water at their own risk." (*Id.* at 9.)

Plaintiff alleges that he "suffered mentally" because he was forced to consume the contaminated water, which he knew could lead to cancer. He adds that he will also have to take pain medication for the rest of his life due to the pain in his leg. And he asserts that Defendants Birkett, Balcarcel, and Pung, along with several of the previously dismissed defendants, were aware of the problems with the water. (*Id.*)

With regard to his second claim, Plaintiff alleges that his leg began to swell up in November of 2012 and that he notified the CCF health-care department in February of 2013. He claims that he first met with two nurses who referred him to see Defendant Merren. Plaintiff

3

alleges that he told Defendant Merren that his family had a history of cancer, but she told him that the swelling on his leg was due to a pulled muscle. Plaintiff maintains that he continued to complain about the swelling for six months until a grievance resulted in an X-ray ordered by Defendant Holmes on July 30, 2013. (Docket no. 1 at 11.)

Plaintiff alleges that a month later, he was called out by Defendant Holmes who told him that he was unable to provide a diagnosis, so he was sending Plaintiff out for an ultrasound. Plaintiff had the ultrasound on or about October 3, 2013, which revealed a tumor in his leg. Plaintiff had a consultation with a surgeon on December 4, 2013, at which time he was informed that some of his pain was likely caused by the tumor pressing on nerves in his leg. Plaintiff alleges that between the time of his consultation and when he ultimately had the tumor removed on January 23, 2014, Defendants Merren and Holmes would only give him 400mg Ibuprofen and 325mg Asprin for his pain. He contends that the failure to properly diagnose his tumor and the resulting pain amounts to deliberate indifference in violation of the Eighth Amendment. (*Id.* at 12.)

**B.  Governing Law**

**1.  Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v. Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

    **2.**     **Injunctive Relief Standard**

Federal Rule of Civil Procedure Rule 65 authorizes the issuance of preliminary injunctions

and temporary restraining orders. The Court may issue a temporary restraining order to preserve the status quo until it has had an opportunity to determine whether a preliminary injunction should issue. *First Tech. Safety Sys, Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citation omitted). In deciding a motion for a preliminary injunction, the court should consider whether (1) the movant has shown a strong or substantial likelihood of success on the merits; (2) the movant will suffer irreparable injury without the injunction; (3) the preliminary injunction will cause substantial harm to others; and (4) the public interest will be served if the injunction issues. *Id*. (citation omitted). While these factors are to be balanced, the failure to show a likelihood of success on the merits is generally fatal. *Id. See also Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Notably, "where a prison inmate seeks an order enjoining state prison officials, [courts must] proceed with the utmost care and must recognize the unique nature of the prison setting." *Schuh v. MDOC*, No. 09-982. 2011 WL 7139457, *3 (W.D. Mich. Nov. 10, 2011) (citing *Kendrick v. Bland*, 740 F.2d 432, 438, n.3 (6th Cir.1984)).

    **C.**    **Analysis**

        **1.**    **Defendants' Motion for Summary Judgment**

Through their Motion for Summary Judgment, Defendants Balcarcel and Pung assert that (1) Plaintiff has failed to state a claim because he does not allege the they are personally involved in any of the alleged wrongful conduct; and (2) they are entitled to qualified immunity because even if Plaintiff has alleged sufficient personal involvement, they did not violate clearly

6

established law, and Plaintiff has failed to sufficiently allege a constitutional violation.

It is a well-established principle that Section 1983 liability cannot be based on a mere failure to act or on a theory of respondeat superior. *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-07 (6th Cir. 1998). Rather, a supervisor must have "'either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must allege that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (*quoting Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Thus, to state a plausible claim for relief, a plaintiff must allege that each defendant was personally involved in, or otherwise condoned, encouraged, or knowingly acquiesced in the alleged misconduct. *Id.*

In his Complaint, Plaintiff alleges that "[a]t all times, [Defendants were] aware of this situation whereas prisoners are being forced to consume this contaminated water under the care of the [MDOC]." (Docket no. 1 at 9.) This statement is the extent of the factual allegations related to Defendants Balcarcel and Pung. Nowhere in Plaintiff's Complaint does he allege that either Defendant took any action or that they implicitly authorized, approved, or knowingly acquiesced in any wrongful conduct. As Defendants acknowledge, Defendant Pung took part in the grievance process related to Plaintiff's claims, but involvement in the grievance process does not impose liability under Section 1983. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006). Therefore, Defendants' Motion should be granted.[4]

---

[4] Because Plaintiff's claims against Defendants Balcarcel and Pung should be dismissed for lack of personal involvement, the Court need not address Defendants' assertion of qualified immunity. Qualified immunity is best addressed after determining whether a plaintiff has stated a constitutional claim upon which relief can be granted. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 n.5 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)) ("[T]he better approach to

### 2. Plaintiff's Motions for a Preliminary Injunction

Insert. Plaintiff's Motion for Immediate Consideration of Plaintiff's Requested Injunctive Relief asks that the Court consider his request for injunctive relief first set forth in his Complaint. (Docket no. 8; *see* docket no. 1 at 5.) In his original request, Plaintiff stated that his life was in danger due to the contaminated water at STF and that it "may cause cancer in the near future." (Docket no. 1 at 5.) Plaintiff further asserted that MDOC officials had taken action that amounted to "attempted murder and/or conspiracy to commit murder." (*Id.*) Plaintiff, therefore, asked that he be released from prison or transferred to a jail outside of MDOC jurisdiction. (*Id.*) In his instant Motion, Plaintiff refers to his original request and the relief sought therein, but he adds that his "life is in serious danger which makes it impossible to litigate this court proceedings (sic)" and that CCF staff have assaulted him and confiscated his legal mail. (Docket no. 8.) The undersigned has considered these filings together as a Motion for Preliminary Injunction.

#### i. Likelihood of Success

Plaintiff's has not met his heavy burden of showing a likelihood of success on the merits in this matter. With regard to his claims in Count I related to the allegedly contaminated drinking water, the Court has already dismissed or recommended dismissal of all but one Defendant: Warden Birkett. Defendant Birkett has not yet been served, but it is likely that Plaintiff's claims against him will be dismissed for the same reason the Court should dismiss Plaintiff's claims against Defendants Balcarcel and Pung.

With regard to Plaintiff's claims in Count II for deliberate indifference to Plaintiff's

---

resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged a deprivation of a constitutional right at all. Normally, it is only then that a court should ask whether the right allegedly implicated was clearly established at the time of the events in question.").

medical needs against Defendants Holmes, Merren, and Corizon, Plaintiff must satisfy two components–an objective component, and a subjective component. *Id.* (citing *Harrison v. Ash*, 538 F.3d 510, 518 (6th Cir. 2008)). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind.'" *Quigley v. Toung Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (quoting *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003)). To satisfy the objective component, "'the plaintiff must allege that the medical need at issue is "sufficiently serious."'" *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994))). To satisfy the subjective component, a plaintiff must show that "'the official knows of and disregards' the substantial risk of serious harm." *Villegas*, 709 F.3d at 569 (quoting *Harrison*, 539 F.3d at 518). Even assuming, *arguendo*, that Plaintiff's tumor satisfies the objective component of his claim, it is unlikely that he will be able to satisfy the subjective component. Nothing in Plaintiff's Complaint suggests that any of the Count II Defendants disregarded a risk of serious harm. To the contrary, it appears that they ultimately diagnosed him properly and had his tumor removed. While Plaintiff may allege that the delay in treatment was unreasonable, he has not shown a likelihood of success through his request for injunctive relief.

### ii. Irreparable Harm

The "key word" in determining the harm caused by failure to issue a plaintiff's requested injunction is "irreparable." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir.1991). A claim that a plaintiff will be injured, however serious, is not enough. *Id.* Instead, "the harm alleged must be both certain and immediate, rather

9

than speculative or theoretical." *Id.* "[T]o substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Id.* (internal citations omitted). Plaintiff alleges, without any evidentiary support, that he has been threatened by MDOC staff. He also alleges that his prior contact with the water at STF "may" cause cancer sometime in the future. To date, it appears that Plaintiff has been able to proceed appropriately in this matter. It does not appear that MDOC staff members have prohibited him from filing pleadings in any way. And he is no longer incarcerated at STF where he may be forced to drink the allegedly contaminated water. Thus, any harm alleged by Plaintiff is merely speculative or theoretical.

### iii. Substantial Harm to Others and the Public Interest

"[T]he administration of state prisons is a matter consigned to the states as part of their sovereign power to enforce the criminal law. In the exercise of this authority, the state has the power to adopt policies it believes are best suited for managing its prisons and assuring the safety and security of those institutions." *In re Wilkinson*, 137 F.3d 911, 914 (6th Cir.1998). Thus, "problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir.1997).

> [J]udicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial.

*Bell v. Wolfish*, 441 U.S. 520, 548 (1979). Plaintiff's request that the Court order Defendants to release him or transfer him outside of MDOC custody, by its very nature, intrudes on the MDOC's

ability to make decisions regarding the care of its prisoners. Such a request affects not only the safety of the plaintiff but also the safety of MDOC staff, other prisoners, and the general public.

Moreover, a prisoner has no Constitutional right to choose his place of confinement; to the contrary, the placement of prisoners within the state correctional system is a basic administrative endeavor in which the courts should not intervene. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46, (1983); *Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Beard v. Livesay*, 798 F.2d 874, 876 (6th Cir.1986). Plaintiff does not request that the Court maintain the status quo and prohibit Defendants from transferring him to another facility. Instead, he asks that the Court order Defendants to transfer him or release him, which would require the Court to squarely interject itself into the MDOC's administration. Such an intervention is not in the public interest.

### iv. Balancing the Factors

As discussed herein, all of the preliminary injunction factors weigh in favor of denying Plaintiff's Motion. Therefore, Plaintiff's request for a preliminary injunction should be denied, and his instant Motion for Immediate Consideration of the same should be denied as moot.

## D. Conclusion

For the reasons stated above, the Court should grant Defendants' Motion for Summary Judgment [24]. Defendants Balcarcel and Pung should be dismissed from this matter. Additionally, Plaintiff's request for a preliminary injunction should be denied, and his instant Motion for Immediate Consideration of the same [8] should be denied as moot.

## III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: May 12, 2015  s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record and on Plaintiff Kenneth Williams on this date.

Dated: May 12, 2015  s/ Lisa C. Bartlett
Case Manager

12